Matter of Estate of Mielty (Mielty)
2026 NY Slip Op 03531
June 5, 2026
Appellate Division, Fourth Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

IN THE MATTER OF THE ESTATE OF ARCHIE J. MIELTY, ALSO KNOWN AS ARCHIE JOHANNES MIELTY, DECEASED. ---------------------------------------------- JOHN E. MIELTY, PETITIONER-RESPONDENT;
v
JAMES. MIELTY, OBJECTANT-APPELLANT. (APPEAL NO. 1.)

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department
Decided on June 5, 2026
231 CA 24-01643
Present: Lindley, J.P., Curran, Ogden, Delconte, And Hannah, JJ.

BOUSQUET HOLSTEIN PLLC, SYRACUSE (CECELIA R. CANNON OF COUNSEL), FOR OBJECTANT-APPELLANT.
CROSSMORE & TIFFANY, ITHACA (EDWARD Y. CROSSMORE OF COUNSEL), FOR PETITIONER-RESPONDENT.

Appeal from an order of the Surrogate's Court, Seneca County (Barry L. Porsch, S.), entered September 6, 2024, in a proceeding to probate a will. The order denied the motion of objectant for summary judgment, granted the cross-motion of petitioner for summary judgment, dismissed the objections, and admitted to probate the last will and testament of decedent.
[*1]
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by vacating the determination to dismiss the objection of undue influence, reinstating that objection, and vacating the ordering paragraph admitting the last will and testament of Archie J. Mielty, dated June 30, 2021, to probate and, as modified, the order is affirmed without costs.
Memorandum: In June 2021, less than two months before his death, Archie J. Mielty (decedent) changed his 2010 will and amended the Archie J. Mielty Revocable Trust (Trust), dated October 12, 2010, to leave all of his assets to one of his sons, petitioner-respondent John E. Mielty (petitioner). Prior versions of the will left the assets equally to petitioner and decedent's other son, objectant-petitioner James V. Mielty (objectant). Petitioner filed a petition to probate the 2021 will, and he amended the petition twice: to add himself as a distributee and to include the Trust as a residuary beneficiary of the will. Objectant filed objections to the amended petition, contending that decedent lacked testamentary capacity when he executed the documents, that the will was the product of undue influence, and that the will was not duly executed. Objectant also commenced a proceeding pursuant to Surrogate's Court Procedure Act § 2102 challenging the amendment to the Trust.
Following discovery, objectant moved in both appeals for summary judgment: in appeal No. 1 on his objections to the probate of the will and in appeal No. 2 on his petition challenging the amendment of the Trust. Petitioner cross-moved in both appeals for "partial summary judgment." In an order with respect to the Estate of Archie J. Mielty, Surrogate's Court denied objectant's motion, granted the cross-motion, and admitted the 2021 will to probate. In a separate order with respect to the Trust, the Surrogate denied objectant's motion, granted the cross-motion, and determined that the Trust was lawfully amended. In appeal No. 1, objectant appeals from the order with respect to the Estate. In appeal No. 2, objectant appeals from the order with respect to the Trust. We agree with objectant in appeal No. 1 that the Surrogate erred in dismissing his objection regarding undue influence and in appeal No. 2 that it erred in dismissing that part of his petition alleging undue influence, and we therefore modify the orders accordingly.
Contrary to objectant's contention in appeal No. 1, the Surrogate properly determined as a matter of law that the 2021 will was duly executed in accordance with EPTL 3-2.1. It is well [*2]settled that the execution of a will requires relatively strict observance of specific statutory formalities: "the testator must sign the document at the end; the testator must sign or acknowledge the signature in the presence of the attesting witnesses; the testator must declare to each of the attesting witnesses that the instrument is [the testator's] will; and there must be two attesting witnesses who shall, within 30 days, attest the testator's signature and, at the request of the testator, sign their names and affix their residence addresses" (Matter of Lewis, 114 AD3d 203, 211 [4th Dept 2014], mod 25 NY3d 456 [2015]; see EPTL 3-2.1 [a]; Matter of Fraccaro, 161 AD3d 1275, 1276 [3d Dept 2018], lv denied 32 NY3d 911 [2018]).
"The burden of proving the validity of a purported will lies with its proponent, who must do so by a preponderance of the evidence" (Fraccaro, 161 AD3d at 1276; see Matter of Walker, 124 AD3d 970, 972 [3d Dept 2015]; Matter of Falk, 47 AD3d 21, 26 [1st Dept 2007], lv denied 10 NY3d 702 [2008]), but "[a] will is presumed to have been properly executed where, as here, the execution was supervised by the attorney who drafted the will" (Matter of Pilon, 9 AD3d 771, 772 [3d Dept 2004]; see Matter of Rodriguez, 239 AD3d 1270, 1271 [4th Dept 2025]; see also Matter of Halpern, 76 AD3d 429, 431-432 [1st Dept 2010], affd 16 NY3d 777 [2011]). Moreover, a presumption of due execution also arises where, as here, "the will was accompanied by a self-executing affidavit of the attesting witnesses . . . In order to rebut this presumption, there must be positive proof that the formal requirements of execution were not met" (Pilon, 9 AD3d at 772 [emphasis added]; see Matter of Korn, 25 AD3d 379, 379 [1st Dept 2006]). Here, there was no positive proof to rebut the presumption of validity.
Contrary to objectant's contention, the mere fact that one of the attesting witnesses could not recall all of the circumstances of the execution of the will does not create an inherent inconsistency and, under the circumstances of this case, does not rebut the presumption of validity. "Where an attesting witness has forgotten the occurrence . . . and at least 1 other attesting witness has been examined the will may be admitted to probate upon the testimony of the other witness . . . and such other facts as would be sufficient to prove the will" (SCPA 1405 [3]; see Matter of Collins, 60 NY2d 466, 469-471 [1983]; Matter of Ziele, 242 AD2d 576, 577 [2d Dept 1997]). Thus, the Surrogate did not improperly credit one attesting witness over the other.
Contrary to objectant's further contention in both appeals, the Surrogate did not err in determining as a matter of law that decedent executed the documents with the requisite testamentary capacity. Initially, objectant contends that the Surrogate erred in refusing to consider a chaplain's notes contained in decedent's hospital records, which stated that decedent had told the chaplain that he avoided serving in the Vietnam War because he was deployed at that time to Finland, when, in fact, he had served in the Korean War and was discharged from the military long before the Vietnam War. According to objectant, those notes evince a lack of capacity. We reject that contention. The notes constitute hearsay and were not properly certified as business records under CPLR 4518 (a). "A proper foundation for the admission of a business record must be provided by someone with personal knowledge of the maker's business practices and procedures" (West Val. Fire Dist. No. 1 v Village of Springville, 294 AD2d 949, 950 [4th Dept 2002]; see Unifund CCR Partners v Youngman, 89 AD3d 1377, 1378 [4th Dept 2011], lv denied 19 NY3d 803 [2012]). No such foundation was laid by objectant. First, there is no evidence that the chaplain was under a business duty to make such notes (see CPLR 4518 [a]; Matter of Joseph M.W. [Blake], 188 AD3d 1563, 1567 [4th Dept 2020]; see generally Iwasykiw v Starks, 179 AD3d 1485, 1487 [4th Dept 2020]; KG2, LLC v Weller, 105 AD3d 1414, 1415-1416 [4th Dept 2013]). Further, there is no evidence to " 'indicate that they were made . . . pursuant to an established procedure for the routine, habitual, systematic making of records that would qualify them as trustworthy accounts,' or that they 'were the records regularly relied on in the business' " (Deutsche Bank Natl. Trust Co. v Dennis, 181 AD3d 864, 869 [2d Dept 2020], quoting People v Kennedy, 68 NY2d 569, 580 [1986]). We have reviewed objectant's remaining contention regarding hearsay exceptions and conclude that it lacks merit. In any event, the notes specifically stated that decedent "was lucid, organized in thought and in a good mood" and thus provide no basis to question decedent's testamentary capacity.
Objectant likewise contends in both appeals that a brief conversation between decedent and petitioner approximately two weeks after the documents were executed establishes that decedent lacked testamentary capacity when he signed the documents. That contention lacks merit. In the conversation, which took place one night when decedent was in the hospital, [*3]decedent told petitioner that he had flown with Charles Lindbergh. We conclude that the one questionable statement two weeks after the documents were executed does not raise an issue of fact regarding defendant's testamentary capacity on the relevant day. "[T]he appropriate inquiry is whether . . . decedent was lucid and rational at the time the will [and the trust amendment were] made" (Matter of Alibrandi, 104 AD3d 1175, 1176 [4th Dept 2013] [internal quotation marks omitted]; see Matter of Buck, 225 AD3d 1186, 1188 [4th Dept 2024]).
We reject objectant's contention that the Surrogate engaged in improper fact-finding. The Surrogate weighed all of the evidence relevant to decedent's condition at the time the will and the trust amendment were made and did not err in according minimal weight to ancillary anecdotes about events that happened at other times when he was in the hospital.
With respect to capacity, objectant further contends in both appeals that, inasmuch as decedent's attorneys did not know the value of decedent's assets or discuss them with him during the execution of the documents, decedent lacked capacity to execute the documents especially because, he contends, decedent was misled about the value of those assets. That contention is belied by the record. On the morning of June 30, 2021, i.e., the day of execution of the documents, decedent conversed with his attorney by telephone and discussed how he wanted certain real estate in Florida, which was not deeded to the trust, to go to petitioner and that he, therefore, had to change his will. Moreover, six months earlier, decedent had signed loan documents outlining all of his assets, including all of his real estate holdings and their values as well as his liabilities.
We nevertheless agree with objectant in both appeals that the Surrogate erred in dismissing his objection and claim related to undue influence. It is well established that issues of testamentary capacity are separate and distinct from issues of undue influence. The issue of undue influence thus involves a distinct inquiry from that of capacity, and a "decedent's testamentary capacity at the time the [will or trust] was executed does not affect" an independent determination that a beneficiary exercised undue influence over the decedent (Matter of Wang, 179 AD3d 418, 419 [1st Dept 2020]; see Matter of Johnson, 6 AD3d 859, 860-861 [3d Dept 2004]; Matter of Donovan, 47 AD2d 923, 924 [2d Dept 1975]).
Although petitioner cross-moved in both appeals for only "partial summary judgment," and petitioner's attorney conceded in both appeals that "the issue of undue influence in this case cannot be determined on summary judgment [because] [d]isputed material facts and questions of credibility must await a trial to be resolved," the Surrogate nevertheless dismissed all of objectant's objections and challenges to the amendment of the Trust, including those related to undue influence. Even assuming, arguendo, that the general relief clauses in petitioner's papers enabled the Surrogate to dismiss the undue influence objection and challenge because they were "not too dramatically unlike that which is actually sought" and objectant was not prejudiced (Tirado v Miller, 75 AD3d 153, 158 [2d Dept 2010]; cf. Burke v Arcadis G & M of N.Y. Architectural & Eng'g Servs., P.C., 149 AD3d 1514, 1517 [4th Dept 2017]; McGuire v McGuire, 29 AD3d 963, 965 [2d Dept 2006]), we conclude that the Surrogate erred in ignoring the concession by petitioner's attorney (see generally Mashreqbank PCS v Ahmed Hamad Al Gosaibi & Bros. Co., 101 AD3d 1, 17 [1st Dept 2012] [Andrias, J., dissenting], revd 23 NY3d 129 [2014]).
In any event, on the merits, we conclude in both appeals that petitioner's own proof establishes that there are triable issues of fact regarding the existence of a confidential relationship and undue influence (see Matter of Rozof, 219 AD3d 1428, 1430 [2d Dept 2023]; see generally Matter of Nealon, 104 AD3d 1088, 1089 [3d Dept 2013], affd 22 NY3d 1045 [2014]; Matter of Dibble, 243 AD3d 993, 995 [3d Dept 2025]).
Entered: June 5, 2026
Ann Dillon Flynn
Clerk of the Court